BEFORE THE UNITED STATES JUDICIAL PANEL
ON MULTIDISTRICT LITIGATION

In re: Adderall XR
(Amphetamine/Dextroamphetamine)
Marketing, Sales Practices and Antitrust
Litigation

MDL No. 2453

SHIRE'S RESPONSE IN OPPOSITION TO PLAINTIFF
ALLYSON NETWALL'S MOTION FOR TRANSFER OF ACTIONS
TO THE EASTERN DISTRICT OF PENNSYLVANIA PURSUANT TO 28 U.S.C. § 1407
FOR COORDINATION OR CONSOLIDATION OF PRETRIAL PROCEEDINGS

FROMMER LAWRENCE & HAUG LLP
Michael F. Brockmeyer
Justine K. Donahue
1667 K Street, N.W.
Washington, DC  20006
Tel. (202) 292-1530
Fax (202) 292-1531
Email:  mbrockmeyer@flhlaw.com
Email:  jdonahue@flhlaw.com

Edgar H. Haug
John F. Collins
David A. Zwally
745 Fifth Avenue
New York, New York 10151
Tel. (212) 588-0800
Fax: (212) 588-0500
Email:  jcollins@flhlaw.com
Email:  dzwally@flhlaw.com

*Counsel for Defendants
Shire US Inc. and Shire LLC*

**INTRODUCTION**

Plaintiff Allyson Netwall asks the Judicial Panel on Multidistrict Litigation (the "Panel") to transfer two lawsuits to the Eastern District of Pennsylvania for consolidation with a third suit. Plaintiffs filed these three suits in separate jurisdictions within a two-day period against the same defendants, Shire US Inc. and Shire LLC (collectively "Shire"). The lawsuits are brought on behalf of separate statewide consumer classes based on different individual state law claims. The same New Orleans law firm represents all plaintiffs in the three cases, and Shire has the same primary counsel in each of the actions.[1]

The Panel should deny plaintiff's motion to transfer because her request is nothing more than a well-orchestrated effort to leverage these cases into something more meaningful than they are—three copycat complaints attempting to repackage a recently-dismissed federal antitrust class action into a consumer protection multidistrict litigation.[2] Transferring the three cases to a single court will not serve convenience and efficiency as required by 28 U.S.C. § 1407 because the multidistrict litigation would include only three cases with a single defendant and the same counsel on both sides. The issues are not numerous or complex. Each case relies on different state laws and covers unique state-based classes of consumers. In these circumstances, the Panel often has concluded that informal cooperation and voluntary coordination among the parties, their counsel, and the respective courts is more appropriate than formal transfer under 28 U.S.C. § 1407.

---

[1] Plaintiffs in the Florida and California cases submitted responses supporting Pennsylvania-plaintiff Allyson Netwall's motion. ECF Nos. 11, 12. This is not at all surprising considering plaintiffs in all three Actions share common counsel; their responses are perfunctory and add nothing to Ms. Netwall's motion.

[2] *See In re Adderall XR Antitrust Litig.*, Lead Case No. 12-cv-3711-VM, dismissed by Judge Victor Marrero *sub nom. Louisiana Wholesale Drug Co., Inc. v. Shire LLC*, Case No. 12-cv-3711-VM, 2013 U.S. Dist. LEXIS 34251 (S.D.N.Y. Mar 6. 2013) (discussed *infra* pp. 5-6).

If, however, the Panel determines that transfer and consolidation for pretrial purposes is appropriate, Shire requests that the cases be transferred to the Honorable Victor Marrero in the Southern District of New York because he is the one judge who has studied the principal factual allegations underlying plaintiff's state law claims and has found that similar allegations failed to state a claim under federal antitrust law. *See supra* n.2.

## BACKGROUND

There are three lawsuits subject to plaintiff's transfer request: *Netwall v. Shire U.S., Inc.,* Case No. 2:13-cv-1669-EL (E.D. Pa. Apr. 1, 2013); *Barba v. Shire U.S., Inc.,* Case No. 1:13-cv-21158-JAL (S.D. Fla. Apr. 2, 2013); and *Shaffer v. Shire LLC*, Case No. 2:13-cv-2363-CAS-JC (C.D. Cal. Apr. 2, 2013) (collectively the "Actions").

A.  **The Three Actions Subject to Transfer**

The complaints in each of the Actions allege a virtually identical set of facts relating to Shire's conduct concerning the Attention Deficit Hyperactivity Disorder ("ADHD") medication, Adderall XR. Plaintiffs' claim that Shire engaged in a fraudulent scheme meant to delay generic competition and restrict supply of an unbranded version of Adderall XR by: (1) filing sham patent litigation; (2) entering into anticompetitive agreements to settle the sham litigation; and (3) breaching certain unbranded Adderall XR supply agreements. *See* Plaintiff's Motion For Transfer ("Mot.") at 2. Plaintiffs in each of the Actions contend that Shire's alleged conduct caused insured consumers in Pennsylvania, Florida, and California to pay higher co-pays than they otherwise would have paid for their Adderall XR prescriptions. *Id.*

The Pennsylvania action asserts claims under Pennsylvania's Unfair Trade Practices and Consumer Protection Law, 73 Pa. Stat. § 201-1, et seq., and common law unjust enrichment. The Florida action asserts claims under Florida's Deceptive and Unfair Trade Practices Act, Fla. Stat. § 501.201, et seq. The California action asserts claims under the Cartwright Act, Cal. Bus.

& Prof. Code § 16700, et seq., California's Unfair Competition Law, Cal. Bus. & Prof. Code § 17200, et seq., and common law unjust enrichment.  Each of the Actions is brought as an ostensible class action on behalf of all persons residing in each state who purchased brand Adderall XR for personal use, and not for resale, from 2009 through the present.[3]  In other words, each case is brought by individuals on behalf of indirect purchaser, state-specific consumer classes.

      B.      **Relevant Facts Relating to the Underlying Adderall XR Patent and Breach-of-Contract Litigation**

Shire is the patent holder and seller of Adderall XR, a brand name drug approved by the Food and Drug Administration ("FDA") in 2001 to treat ADHD.  *See Louisiana Wholesale Drug Co., Inc. v. Shire LLC*, Case No. 12-cv-3711-VM, 2013 U.S. Dist. LEXIS 34251, *2 (S.D.N.Y. Mar 6. 2013).  Adderall XR has been the subject of patent litigation based upon the filing of an Abbreviated New Drug Application ("ANDA") with FDA by certain companies to market their own generic versions of Adderall XR.  *Id.* at *4.  Relevant to the claims in the Actions, in November 2002, Barr Laboratories, Inc. ("Barr") filed an ANDA seeking FDA approval to manufacture and sell generic Adderall XR.  *Id.*  Impax Laboratories, Inc. ("Impax") filed a similar ANDA in November 2003.  *Id.*  Shire sued Barr and Impax for patent infringement under

---

[3] In the Pennsylvania Action, plaintiff's unfair trade practices and consumer protection claim is brought only on behalf of a subclass of Pennsylvania consumers, while plaintiff's unjust enrichment claim is brought on behalf of both the Pennsylvania subclass and a national class of consumers who purchased brand Adderall XR from April 1, 2009 through the present.  The Pennsylvania complaint is the only action alleging a national class, and it only relates to the unjust enrichment claim.

3

the Hatch-Waxman Act, 21 U.S.C. § 355 et seq.[4]  *Id.*  Shire settled its Adderall XR patent case against Impax in January 2006, and its case against Barr in August 2006.  *Id.*

As part of its settlement with Barr, Shire granted Barr a license permitting it to sell generic Adderall XR under the Barr ANDA beginning on April 1, 2009 (the license effective date).  *Id.* at *4-5.  If FDA had not approved Barr's ANDA by that date, the agreement allowed Barr to purchase unbranded Adderall XR product supplied by Shire and sell it under a Barr generic label (commonly referred to as an authorized generic or AG product).  *Id.*  Similarly, as part of its settlement with Impax, Shire granted Impax a license effectively beginning October 1, 2009 (the license effective date) to sell generic Adderall XR under the Impax ANDA, or, like the Barr agreement, if FDA had not approved Impax's ANDA by the date when Impax could launch its generic product, Impax could purchase unbranded Adderall XR product from Shire and sell it as AG product.  *Id.*  Because FDA had not approved either of the Barr or Impax ANDAs by their respective launch dates, Shire began supplying unbranded Adderall XR first to Barr and then also to Impax, ensuring generic entry when the generics' respective licenses became effective.  Barr began purchasing AG product from Shire and selling it as generic Adderall XR on April 1, 2009.  *Id.* at *5, n.3.  Impax began doing the same on October 1, 2009.  *Id.*

Shire's supply of AG product to Barr and Impax under their respective license agreements has been the subject of two breach-of-contract cases filed against Shire.  The first was filed by Teva Pharmaceuticals USA, Inc. ("Teva") in the Southern District of New York on October 19, 2009.  *Teva Pharmaceuticals USA, Inc. v. Shire LLC*, Case No. 09-cv-8860

---

[4] Shire's patent infringement cases against Barr were litigated in the Southern District of New York.  *Shire Labs., Inc. v. Barr Labs., Inc.*, Case Nos. 03-cv-1219, 03-cv-6632, and 05-cv-8903 (S.D.N.Y).

4

(S.D.N.Y.).[5]  Shire and Teva settled this case within a month.  The second case was filed by Impax on November 1, 2010, and was also litigated in the Southern District of New York. *Impax Laboratories, Inc. v. Shire LLC*, Case No. 10-cv-8386 (S.D.N.Y.).  The Impax case spanned more than two years and settled after the parties had completed all trial preparation work.  Teva and Impax each accused Shire of breaching its Adderall XR AG supply obligations by failing to supply in a timely manner all of the product each of these companies had ordered.  Judge Miriam Cedarbaum presided over both cases.

### C. The Adderall XR Direct Purchaser Antitrust Suit Recently Dismissed by Judge Marrero

On May 9, 2012, Louisiana Wholesale Drug Company, Inc. ("Louisiana Wholesale"), on behalf of a purported class of direct purchasers of Adderall XR, sued Shire for monopolization in violation of Section 2 of the Sherman Act, 15 U.S.C. § 2.  *Louisiana Wholesale Drug Co., Inc. v. Shire LLC*, Case No. 12-cv-3711-VM, 2013 U.S. Dist. LEXIS 34251, *2 (S.D.N.Y. Mar 6. 2013).  That case was also filed in the Southern District of New York and subsequently consolidated with another action as *In re Adderall XR Antitrust Litigation*, Lead Case No. 12-cv-3711-VM, presided over by Judge Victor Marrero.  *Id.*

Louisiana Wholesale alleged that Shire had intentionally breached its settlement agreements with Teva and Impax by failing to supply them with all the authorized generic Adderall XR product they had ordered from Shire.  *Louisiana Wholesale*, 2013 U.S. Dist. LEXIS 34251, at *5-6.  Louisiana Wholesale further alleged that Shire intentionally breached the Teva and Impax contracts to keep AG supply low and prices artificially high.  *Id*.

---

[5] On December 23, 2008, Teva acquired Barr as a wholly-owned subsidiary.  *See* http://ir.tevapharm.com/phoenix.zhtml?c=73925&p=irol-newsArticle&ID=1554791&highlight.  In October 2009, Barr assigned its license and right to buy AG product from Shire to Teva, causing the plaintiff in this suit to be Teva.

5

Shire moved to dismiss the direct purchaser action on the ground that Louisiana Wholesale did not state a Section 2 antitrust violation because Shire's challenged actions were all within its lawful exclusive rights under its Adderall XR patents. *Louisiana Wholesale*, 2013 U.S. Dist. LEXIS 34251, at *11. The court agreed with Shire and dismissed the lawsuit on March 6, 2013. *Id.* at *26-27.

Judge Marrero explained that Louisiana Wholesale's claims did not support an antitrust claim because even if Shire had intentionally breached its AG supply obligations to Teva and Impax, Shire's actions and the terms of the Teva and Impax license agreements, including the AG product supply provisions, were within the scope of Shire's rights under the Adderall XR patents. *Id.* at *26. The court also rejected Louisiana Wholesale's argument that, while the terms of the Teva and Impax settlements themselves may not constitute antitrust violations, Shire's actions under those agreements do because Shire had a duty to deal with its competitors and Shire violated that duty by failing to supply Adderall XR after contracting to do so. *Id*. at *14. Judge Marrero explained, "[i]t would be a strange result indeed if Shire's decision to allow multiple licensees—thereby increasing competition—would take the patents 'out of the picture,' . . . and thus increase [Shire's] exposure to antitrust liability." *Id*. at *20.

The breach-of-contract allegations in the Pennsylvania, Florida, and California Actions are virtually identical to the allegations in the recently-dismissed Louisiana Wholesale direct purchaser lawsuit. Namely, the consumer plaintiffs in Pennsylvania, Florida, and California allege that Shire's purported breach of its supply obligations to Teva and Impax caused an artificial shortage of less expensive unbranded Adderall XR, which, in turn, harmed consumers, in violation of the state antitrust, unfair competition, and consumer protection statutes. *See* Mot. at 2.

## ARGUMENT

The Panel may transfer civil actions pending in multiple districts for coordinated pretrial proceedings when transfer "will be for the convenience of parties and witnesses and will promote the just and efficient conduct of such actions." 28 U.S.C. § 1407(a).  Here, neither convenience nor efficiency will not be promoted by creating an MDL to manage three cases involving one defendant, asserting different state law claims for different state-based classes, and having common counsel.  Rather, convenience and efficiency—prerequisites for a transfer order—will be best served by allowing counsel to voluntarily coordinate pretrial matters and litigate the Actions in the districts plaintiffs' counsel originally chose.  Stated simply, there is no need to consolidate these three consumer class action lawsuits as a multidistrict litigation.

If the Panel were to decide that consolidation would promote efficient management of the cases, Shire requests that the Actions be transferred to Judge Marrero in the Southern District of New York because he is familiar with the principal allegations underlying the claims brought by the consumer plaintiffs in the Actions.

### A. Transfer Should Be Denied Because Only Three Cases Are Pending and All Three Cases Involve the Same Defendant and Common Counsel

The Panel has repeatedly rejected attempts to centralize actions where few cases are pending and the cases involve common counsel.  *See, e.g., In re Trans Union LLC Fair Credit Reporting Act Litig.*, MDL No. 2427, 2013 U.S. Dist. LEXIS 17477, *2 (J.P.M.L. Feb. 7, 2013) (denying transfer of three actions pending in two districts involving common counsel); *In re Northeast Contaminated Beef Prods. Liab. Litig.*, 856 F. Supp. 2d 1354, 1355 (J.P.M.L. 2012) (same); *In re Trilegiant Mbrshp. Program Mktg. & Sales Practices Litig.*, 828 F. Supp. 2d 1362, 1363 (J.P.M.L. 2011) (finding the relatively few involved counsel involved in the six actions pending in six districts weighed against centralization); *In re Boehringer Ingelheim Pharms.,*

7

*Inc., Fair Labor Standards Litig.*, 763 F. Supp. 2d 1377, 1378 (J.P.M.L. 2011) ("[T]he presence of common counsel for moving plaintiffs in actions filed shortly before the motion for centralization might also weigh against centralization'"); *In re Rite Aid Corp. Wage and Hour Emp't Practices Litig.*, 655 F. Supp. 2d 1376, 1377 (J.P.M.L. 2009) (denying centralization where plaintiffs in four of six actions shared counsel).

The Panel has recognized that when a minimal number of actions are subject to transfer, "the moving party generally bears a heavier burden of demonstrating the need for centralization." *In re Transocean Ltd. Secs. Litig.*, 753 F. Supp. 2d 1373, 1374 (J.P.M.L. 2010). The moving party must show "that the common questions of fact are so complex and the accompanying discovery so time-consuming as to overcome the inconvenience to the party whose action is being transferred and its witnesses." *In re Scotch Whiskey Antitrust Litig.*, 299 F. Supp. 543, 544 (J.P.M.L. 1969); *see also In re Royal Am. Indus., Inc. Sec. Litig.*, 407 F. Supp. 242, 243 (J.P.M.L. 1976).

The Panel often denies transfer when a few actions and common counsel make informal cooperation among counsel and coordination among the courts preferable to formal centralization. *See In re Amer. Home Realty Network, Inc.*, MDL No. 2431, 2013 U.S. Dist. LEXIS 52567, *2 (J.P.M.L. Apr. 8, 2013) (denying transfer because, even though the three cases involved common factual issues, informal cooperation and coordination among counsel and the courts were more appropriate than formal centralization); *In re Trans Union LLC Litig.*, 2013 U.S. Dist. LEXIS 17477, at *2 (voluntary cooperation by the parties is more appropriate than formal transfer given the low number of actions, involvement of common counsel, and factual differences in the actions); *In re Bally Total Fitness Holding Corp. Lifetime Membership Agreement Contract Litig.*, MDL No. 2369, 883 F. Supp. 2d 1343, 1344 (J.P.M.L. 2012) (same).

8

Plaintiff makes no showing whatsoever that the common factual questions in the three Actions are so complex, discovery will be so time-consuming, and transfer of the three Actions to one district will serve the convenience of the parties and witnesses and promote the just and efficient conduct of the cases. Plaintiff simply makes the conclusory statement that the requirements for transfer under Section 1407 are met because "there are several similar actions involving common questions of fact[.]" Mot. at 3. This assertion is hardly sufficient for plaintiff to meet her heavy burden of demonstrating the need for centralization. This failure, along with the fact that the issues are not numerous, complex, or overlapping, mandates against transfer.

> B.  **Transfer Should Be Denied Because the Issues Are Not So Numerous or Complex to Warrant an MDL**

The Panel also regularly denies transfer motions when the issues in the cases are not sufficiently numerous or complex to warrant an MDL. *See, e.g., In re Waggin Train Chicken Jerky Pet Treat Products Liab. Litig.*, MDL No. 2392, 2012 U.S. Dist. LEXIS 139739, *1-2 (J.P.M.L. Sept. 28, 2012) (the Panel was not convinced that the issues were sufficiently numerous or complex to warrant the creation of an MDL); *In re Crest Sensitivity Treatment and Prot. Toothpaste Mktg. and Sales Practices Litig.*, 867 F. Supp. 2d 1348 (J.P.M.L. 2012) (denying unopposed motion to transfer because the shared factual issues were not sufficiently complex to warrant centralization); *In re Trilegiant Mbrshp. Program Mktg. & Sales Practices Litig.*, 828 F. Supp. 2d at 1362-63 (denying transfer in case involving a nationwide class alleging RICO violations because "[t]he movants have not convinced us that any common factual questions are sufficiently complex or numerous to justify Section 1407 transfer[.]").

As the Panel has explained:

> In these circumstances, informal cooperation among counsel and coordination among the involved courts are, in our judgment, preferable to formal centralization. Various mechanisms are available to minimize or eliminate the possibility of duplicative discovery even without an MDL. Notices of deposition

9

>can be filed in all related actions; the parties can stipulate that any discovery relevant to more than one action can be used in all those actions; or the involved courts may direct the parties to coordinate their pretrial activities.

*In re Crest Sensitivity Treatment Litig.*, 867 F. Supp. 2d at 1348 (citations omitted).

Plaintiff offers no reasons why formal transfer and centralization would be more efficient than informal cooperation and coordination. All three Actions rest on the assertion that Shire engaged in conduct that harmed plaintiff-insured consumers by requiring them to pay higher co-pays for Adderall XR because Shire had not sold sufficient AG product to Barr and Impax. This claim is not so complex that consolidation before one district court is necessary to provide more efficient conduct of the cases. Moreover, because each Action is based upon separate state laws, their differences weigh against any efficiencies that could be gained from centralization. Thus, the Panel should follow its typical course in these circumstances: deny transfer and allow the parties to informally cooperate and coordinate the three Actions.

    **C.**    **Transfer Should Be Denied Because the Cases Involve Different State Laws and Are Brought on Behalf of Different Classes of Consumers**

The three Actions involve common factual allegations, but their similarity ends there. The three complaints assert different state law claims and are brought on behalf of state-specific classes of consumers. None asserts a federal claim and, with one exception, no national classes are sought to be certified (except for unjust enrichment under Pennsylvania common law).[6] That is, the Pennsylvania action involves a class of Pennsylvania consumers asserting their primary claim under the Pennsylvania consumer protection statute; the Florida action involves a class of Florida consumers asserting claims under Florida's deceptive and unfair trade practices act; and,

---

[6] The Pennsylvania Action is unique in that it alleges a nationwide class of consumers seeking recovery only under Pennsylvania's common law unjust enrichment. The primary claim in the Pennsylvania Action, however, is brought solely by a purported class of Pennsylvania consumers under Pennsylvania's unfair trade practices and consumer protection statute.

the California action involves a class of California consumers asserting claims under California's antitrust and unfair competition statutes.[7]  Because the laws involved and the putative classes sought are totally distinct among the Actions, there is absolutely no risk of inconsistent legal or class certification rulings.  Thus, plaintiff's argument that centralization is appropriate to "prevent duplicative and potentially conflicting pretrial rulings" is meritless.  Mot. at 3.

Moreover, given the application of different state laws to plaintiffs' common factual allegations, circumstances could develop whereby certain of plaintiffs' claims survive a motion to dismiss, while other claims do not.  Thus, centralization of the three Actions in, for example, the Eastern District of Pennsylvania, would not aid convenience and judicial efficiency if the only claim to survive a motion to dismiss involved California or Florida law.

Finally, plaintiff's argument that the convenience of the parties and witnesses "clearly supports transfer and pretrial consolidation" is unsupportable.  Mot. at 4.  These Actions involve three distinct, non-overlapping, putative consumer classes located in three different parts of the country, and none of the plaintiffs has a claim in common with the plaintiffs in the other cases.  Thus, no convenience or efficiency would be gained by bringing these plaintiffs located across the country formally together to litigate their unique state law claims in a potentially foreign jurisdiction.  *Compare In re Am. Investors Life Ins. Co. Annuity Mktg. & Sales Practices Litig.*, 398 F. Supp. 2d 1361, 1362 (J.P.M.L. 2005) (finding centralization necessary in order to eliminate duplicative discovery, prevent inconsistent pretrial rulings, especially regarding class certification, and conserve resources of the parties, counsel, and the judiciary).  Discovery, briefing, and other pretrial matters concerning the individual state statutes and consumer classes alleged in the three Actions will necessarily involve different issues, theories, and arguments.

---

[7] The Pennsylvania and California Actions include claims for unjust enrichment; the Florida Action does not.

Accordingly, any convenience and efficiency that could possibly be gained by consolidating these cases will be eviscerated by the unique legal issues each of the Actions presents.

> **D.  If the Panel Decides the Cases Should be Centralized for Pretrial Proceedings, the Cases Should be Transferred to Judge Marrero in the Southern District of New York**

Given the minimal number of cases, all plaintiffs having common counsel, the non-complexity of the issues, and the state-specific legal and class certification issues that exist among the three Actions, plaintiff's motion to transfer should be denied. If, however, the Panel determines that transfer is appropriate, the Actions should be sent to the Southern District of New York and assigned to Judge Marrero, who has familiarity with the facts underlying plaintiff's claims based upon his recent handling of the *In re Adderall XR Antitrust Litigation*.

It is important to note that these Actions were recently filed and have not progressed beyond the initial filing of the complaints. Consequently, no judge assigned to any of the Actions is familiar with the issues yet, and none of the Actions is further along than any other. *Cf. In re Am. Investors Life Ins. Co.,* 398 F. Supp. 2d at 1362 (transferring cases to the Eastern District of Pennsylvania because several actions had been pending there for nearly a year longer than the actions in any of the other districts). While the Pennsylvania complaint was technically filed first, it was followed a day later by the Florida and California complaints. Thus, despite plaintiff referring to the Pennsylvania complaint as "first-filed," this fact should be given no weight. *See* Mot. at 7.

Plaintiff contends that the three Actions should be transferred to the Eastern District of Pennsylvania because this district is "clearly the 'center of gravity' with respect to the activity in this litigation." *Id.* at 5. Other than Pennsylvania plaintiff Allyson Netwall's living in Delaware County, Pennsylvania, and Shire's having offices in a Philadelphia suburb, nothing about the Eastern District of Pennsylvania makes it more convenient or appropriate as the transferee court

than the Southern District of New York.  The Florida and California plaintiffs will have to travel regardless, as will counsel for the parties.  Both courts are equally accessible and equipped to handle MDL matters.

One significant factor that tips the scale in favor of transfer to the Southern District of New York is Judge Marrero's familiarity with the factual issues raised in the Actions.  *See, e.g., In re Air Crash Disaster Near Papeete, Tahiti, on July 22, 1973*, 397 F. Supp 886, 887 (J.P.M.L. 1975) (transferring cases to Judge Firth because he was familiar with the issues in the litigation). Judge Marrero examined and resolved the claims asserted in the *Louisiana Wholesale* litigation, which involved substantially the same facts and injury theories asserted by the consumer plaintiffs in the Actions.  Shire moved to dismiss Louisiana Wholesale's complaint for failure to state a claim, and, on March 6, 2013, Judge Marrero issued a lengthy opinion granting Shire's motion.  *See Louisiana Wholesale Drug Co.,* 2013 U.S. Dist. LEXIS 34251, at *26-27.  Judge Marrero is, therefore, more familiar with the issues presented in the Actions than even Judge Ludwig who was simply assigned the Pennsylvania litigation shortly after it was filed on April 1, 2013.[8]  Even though the Panel sometimes disfavors transferring cases to jurisdictions where no action is currently pending, a transfer to Judge Marrero in the Southern District of New York would be appropriate because he is the judge most familiar with issues raised in the Actions.[9]

---

[8] Alternatively, plaintiff favors transfer to Judge Schiller in the Eastern District of Pennsylvania who recently presided over *In re Budeprion XL Marketing & Sales Practices Litigation*, MDL No. 2107.  Mot. at 7-8.  Plaintiff's counsel in all three Actions was also plaintiffs' lead counsel before Judge Schiller in *In re Budeprion XL Marketing & Sales Practices Litigation*.  See http://kanner-law.com/practice-areas/complex-litigation-and-class-actions.

[9] If the Panel determines that the cases should be consolidated but Judge Marrero is unable or unavailable to be the receiving judge, the Actions should still be transferred to the Southern District of New York because the underlying Adderall XR breach-of-contract cases and the Barr patent infringement case was litigated and resolved in the Southern District of New York. *See supra* n.4, pp. 4-5.

In sum, if centralization is deemed appropriate, there is no compelling reason for the three Actions to be transferred to Pennsylvania and assigned to a judge with no familiarity with the cases. Instead, the Actions should be transferred to Judge Marrero in the Southern District of New York.

## CONCLUSION

For the foregoing reasons, Shire respectfully requests plaintiff's motion for transfer be denied because consolidation under 28 U.S.C. § 1407 will not serve the convenience of the parties and witnesses or further the just and efficient conduct of the litigation. Alternatively, Shire requests that if the Panel determines consolidation is appropriate, the Actions be transferred to the Southern District of New York and assigned to the Honorable Victor Marrero.

Dated:  May 2, 2013                               Respectfully submitted,

/s/ *Michael F. Brockmeyer*
FROMMER LAWRENCE & HAUG LLP
Michael F. Brockmeyer
Justine K. Donahue
1667 K Street, N.W.
Washington, DC  20006
Tel. (202) 292-1530
Fax (202) 292-1531
Email:  mbrockmeyer@flhlaw.com
Email:  jdonahue@flhlaw.com

Edgar H. Haug
John F. Collins
David A. Zwally
745 Fifth Avenue
New York, New York 10151
Tel. (212) 588-0800
Fax: (212) 588-0500
Email:  jcollins@flhlaw.com
Email:  dzwally@flhlaw.com

*Counsel for Defendants*
*Shire US Inc. and Shire LLC*

14

# PROOF OF SERVICE

I, Michael F. Brockmeyer, counsel for defendants Shire US Inc. and Shire LLC, certify that a copy of Shire's Response in Opposition to Plaintiff Allyson Netwall's Motion for Transfer of Actions to the Eastern District of Pennsylvania Pursuant to 28 U.S.C. § 1407 for Coordination or Consolidation of Pretrial Proceedings was served through the Panel's electronic filing system on May 2, 2013 to the following:

***Shaffer v. Shire US Inc., et al.***
**USDC Central District of California, Case No. 2:13-cv-02363-CAS-JC**

| | |
|---|---|
| **KANNER AND WHITELEY LLC** | **MILSTEIN ADELMAN LLP** |
| Allan Kanner | Gillian L. Wade |
| Conlee Whiteley | Sara D. Avila |
| Cynthia St. Amant | M. Isaac Miller |
| 701 Camp Street | 2800 Donald Douglas Loop North |
| New Orleans, LA 70130 | Santa Monica, CA 90405 |
| (504) 524-5777 | (310) 396-9600 |
| a.kanner@kanner-law.com | gwade@milsteinadelman.com |
| c.whiteley@kanner-law.com | savila@milsteinadelman.com |
| c.stamant@kanner-law.com | imiller@milsteinadelman.com |

*Attorneys for Plaintiff Erin Shaffer individually and for all other persons similarly situated*

***Barba et al. v. Shire US Inc. et al.***
**USDC Southern District of Florida, Case No. 1:13-cv-21158-JAL**

| | |
|---|---|
| **KU & MUSSMAN, PA** | **KANNER AND WHITELY LLC** |
| Brian Ku | Allan Kanner |
| M. Ryan Casey | Conlee Whiteley |
| 12550 Biscayne Blvd., Suite # 406 | Cynthia St. Amant |
| Miami, FL 33181 | John R. Davis |
| (305) 891-1322 | Brittney N. Bullock |
| brian@kumussman.com | 701 Camp Street |
| ryan@kumussman.com | New Orleans, LA 70130 |
| | (504) 524-5777 |
| | a.kanner@kanner-law.com |
| | c.whiteley@kanner-law.com |
| | c.stamant@kanner-law.com |
| | j.davis@kanner-law.com |
| | b.bullock@kanner-law.com |

*Attorneys for Plaintiffs Monica Barba and Jonathan Reisman individually and for all other persons similarly situated*

*Allyson Netwall v. Shire US Inc., et al.*
USDC Eastern District of Pennsylvania, Case No. 2:13-cv-01669-EL

| | |
|---|---|
| **GOLOMB & HONIK, PC** | **KANNER AND WHITELEY LLC** |
| Richard M. Golomb | Allan Kanner |
| Ruben Honik | Conlee Whiteley |
| Tammi Markowitz | 701 Camp Street |
| 1515 Market Street, Suite 1100 | New Orleans, LA 70130 |
| Philadelphia, PA 19102 | (504) 524-5777 |
| (215) 985-9177 | a.kanner@kanner-law.com |
| rgolomb@golombhonik.com | c.whiteley@kanner-law.com |
| rhonik@golombhonik.com | |
| tmarkowitz@golombhonik.com | |

*Attorneys for Plaintiff Allyson Netwall individually and for all other persons similarly situated*


Dated:  May 2, 2013					By:  /s/ *Michael F. Brockmeyer*
							**FROMMER LAWRENCE & HAUG LLP**
							*Counsel for Defendants*
							*Shire US Inc. and Shire LLC*